1   DIEFENBACH LAW GROUP
    JAMES C. DIEFENBACH
2   (admitted pro hac vice, CA#286177)
    11835 Carmel Mountain Road
3   Suite 1304-313
    San Diego, California 92128
4   Telephone:  (858) 524-4950
    Facsimile:  (866)-606-4703
5   E-mail:  james@diefenbachlawgroup.com

6   Attorneys for Plaintiff MTM Builders, Inc.

7

8

9

10              **IN THE UNITED STATES DISTRICT COURT**

11              **FOR THE DISTRICT OF ARIZONA**

12  MTM BUILDERS, INC., a California          Case No.:
    corporation,
13                                            **COMPLAINT OF MTM**
14          Plaintiff,                        **BUILDERS, INC. FOR:**
15  v.
                                              (1)  NEGLIGENCE;
16  BRIDGERS & PAXTON                         (2)  BREACH OF CONTRACT;
    CONSULTING ENGINEERS, INC., a                  and
17  New Mexico corporation,                   (3)  EQUITABLE INDEMNITY.
18
            Defendant.                        Judge:
19                                            Dept.:
20
21                                            Complaint Filed:
                                              Trial Date:
22
                                              [DEMAND FOR JURY TRIAL &
23                                            CERTIFICATION PURSUANT TO
                                              A.R.S. § 12-2602]
24

25          Plaintiff MTM Builders, Inc. ("MTM Builders") alleges the following

26  against Defendant Bridgers & Paxton Consulting Engineers Inc. ("Bridgers &

27  Paxton"):

28

    COMPLAINT OF MTM BUILDERS, INC.

**PARTIES**

1.    MTM Builders is, and at all times mentioned was, a corporation duly organized and existing under and by virtue of the laws of the State of California, with its principal place of business in California.

2.    Bridgers & Paxton is, and at all times mentioned was, a corporation organized and existing under and by virtue of the laws of the State of New Mexico, with its principal place of business in New Mexico.

**JURISDICTION AND VENUE**

3.    The Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the value of $75,000, exclusive of interest and costs, and is between citizens of different states.

4.    Venue is proper under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to these MTM Builders' claims occurred, the project at issue is situated, and the contracts at issue were performed, in this judicial district.

**GENERAL ALLEGATIONS**

5.    On or about August 27, 2010, MTM Builders entered into a written contract (the "Contract") with Pathfinder Construction, Inc. ("Pathfinder"), to provide engineering and design services related to the project known as Design-Build of Selected ECMs at the Phoenix, AZ VA Medical Center, Contract No. VA701-C-0062 (the "Project").  The Project generally consisted of the construction of energy efficiency upgrades to the Phoenix VA Medical Center campus, and Pathfinder was the general contractor for it.

6.    On or about August 31, 2010, MTM Builders entered into a written subcontract (the "Subcontract") with Bridgers & Paxton pursuant to which Bridgers & Paxton agreed to perform engineering and design services and related work at the Project.  A true and correct copy of the Subcontract is attached to this complaint as **Exhibit 1** and is incorporated by reference as though set forth in full

2

COMPLAINT OF MTM BUILDERS, INC.

1   at this point.

2   **<u>FIRST CLAIM FOR RELIEF</u>**

3   **(Negligence)**

4   7.      MTM Builders realleges and incorporates by reference paragraphs 1

5   through 6, above, as though set forth in full at this point.

6   8.      Bridgers & Paxton owed MTM Builders a legal duty to, inter alia:

7       a.      Perform its work on the Project in a good and workmanlike

8               manner;

9       b.      Perform its work free of deficiencies and defects;

10      c.      Use due care when performing its work; and

11      d.      Complete all of the work to be performed under the

12              Subcontract non-negligently so as to complete it in a timely

13              manner and in accordance with the Contract.

14  9.      Within the last three years, Bridgers & Paxton breached its duty to

15  MTM Builders by:

16      a.      Negligently and carelessly performing its work;

17      b.      Negligently and carelessly administering, supervising,

18              coordinating and managing the Subcontract work;

19      c.      Negligently and carelessly completing its work in an untimely

20              manner; and

21      d.      Negligently and carelessly failing to complete all of the work

22              to be performed under the Subcontract in accordance with the

23              Contract.

24  10.     As a direct and proximate result of Bridgers & Paxton's negligence,

25  MTM Builders has incurred or will incur damages in a sum not yet fully

26  ascertained and according to proof at trial, but at least the jurisdictional minimum

27  of this Court, together with interest at the maximum legal rate from dates

28  according to proof.

COMPLAINT OF MTM BUILDERS, INC.

1

## SECOND CLAIM FOR RELIEF

2

### (Breach of Contract)

3    11.    MTM Builders realleges and incorporates by reference paragraphs 1

4    through 10, above, as though set forth in full at this point.

5    12.    MTM Builders performed all conditions, covenants and promises

6    required on its part to be performed in accordance with the terms and conditions

7    of the Subcontract, or was excused from performance.

8    13.    Within the last four years, Bridgers & Paxton breached the

9    Subcontract by, among other things, failing to properly perform its Subcontract

10   obligations.

11   14.    Bridgers & Paxton's performance failures and breaches of the

12   Subcontract cost MTM at least $266,018.00 in damages due to failures of

13   Bridgers & Paxton to properly design the Chilled Water Storage unit, which

14   resulted in substantial delays to the Project and the ultimate termination of the

15   prime contract between the owner and general contractor.

16   15.    As a direct and proximate result of Bridgers & Paxton's breaches of

17   the Subcontract, MTM Builders has been damaged in a sum not yet fully

18   ascertained, but at least at least $266,018.00 and according to proof at trial,

19   together with interest at the maximum legal rate from dates according to proof.

20   16.    Pursuant to the Subcontract, MTM Builders is entitled to an award

21   of its reasonable attorneys' fees, costs, and expenses.

22

## THIRD CLAIM FOR RELIEF

23

### (Equitable Indemnity)

24   17.    MTM Builders realleges and incorporates by reference paragraphs 1

25   through 6, above, as though set forth in full at this point.

26   18.    MTM Builders has received claims and demands, and/or expects to

27   receive claims and/or demands from Pathfinder for reasons that may be

28   attributable to the acts or omissions of Bridgers & Paxton. Specifically, on or

4

COMPLAINT OF MTM BUILDERS, INC.

1    about August 10, 2020, Pathfinder filed an action against MTM Builders in

2    California state court, asserting that MTM Builders is liable to Pathfinder for,

3    among other things, damages allegedly resulting from Bridgers & Paxton's work

4    on the Project ("Pathfinder Claims").

5         19.     To the extent MTM Builders is liable to Pathfinder for the

6    Pathfinder Claims caused by Bridgers & Paxton through its negligent and

7    substandard design, Bridgers & Paxton is liable to MTM Builders for those

8    claims.

9         20.     By reason of the foregoing, and in equity and good conscience,

10   Bridgers & Paxton must indemnify MTM Builders from all damages or losses

11   that may be incurred by MTM Builders due to such claims and demands.

12                         **PRAYER FOR RELIEF**

13        Accordingly, MTM Builders requests entry of judgment as follows:

14   ON THE FIRST CLAIM:

15        1.     For general, special and consequential damages in a sum not yet

16   fully ascertained but at least $75,000.00, and according to proof at trial.

17   ON THE SECOND CLAIM:

18        1.     For general, special and consequential damages in a sum not yet

19   fully ascertained but at least $266,018.00, and according to proof at trial; and

20        2.  For reasonable attorneys' fees, costs, and expenses, pursuant to the

21   Subcontract.

22   ON THE THIRD CLAIM:

23        1.     For indemnity and reimbursement from Bridgers & Paxton of all

24   damages, costs, expenses, attorneys' fees, or losses incurred by MTM Builders

25   with respect to the Pathfinder Claims.

26   ON ALL CLAIMS:

27        1.     For prejudgment interest on all sums at the maximum rates and from

28   dates according to proof;

COMPLAINT OF MTM BUILDERS, INC.

1       2.      For costs of suit; and

2       3.      For such other relief the Court deems just.

DATED:  August 11, 2021              DIEFENBACH LAW GROUP

By:  *James C. Diefenbach*
_____
JAMES C. DIEFENBACH
Attorneys for Plaintiff MTM Builders,
Inc.

6

COMPLAINT OF MTM BUILDERS, INC.

1

## **DEMAND FOR JURY TRIAL**

2        Pursuant to Rule 38 of the Federal Rules of Civil Procedure, MTM

3   Builders demands trial by jury in this action.

4   DATED: December 9, 2021

                                                   DIEFENBACH LAW GROUP

5

6

7                                            By: _*James C. Diefenbach*_____

8                                                  JAMES C. DIEFENBACH
                                              Attorneys for Plaintiff MTM Builders,
9                                              Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT OF MTM BUILDERS, INC.

## <u>CERTIFICATION PURSUANT TO A.R.S. § 12-2602</u>

Pursuant to A.R.S. § 12-2602, Plaintiff hereby certifies in writing that expert opinion testimony is or may be necessary to prove the standard of care and/or liability of Defendant Bridger & Paxton for the claims asserted in Plaintiff's complaint.

DATED: December 9, 2021            DIEFENBACH LAW GROUP


By: *James C. Diefenbach*
      JAMES C. DIEFENBACH
    Attorneys for Plaintiff MTM Builders, Inc.

8

COMPLAINT OF MTM BUILDERS, INC.

Exhibit 1

*on Tin Copy*

# AGC DOCUMENT No. 420

## STANDARD FORM OF AGREEMENT BETWEEN DESIGN-BUILDER AND ARCHITECT/ENGINEER FOR DESIGN-BUILD PROJECTS

### TABLE OF ARTICLES

1. AGREEMENT

2. GENERAL PROVISIONS

3. ARCHITECT/ENGINEER'S RESPONSIBILITIES

4. DESIGN-BUILDERS RESPONSIBILITIES

5. SCHEDULE

6. ARCHITECT/ENGINEER'S COMPENSATION AND PAYMENTS

7. INDEMNITY, INSURANCE AND WAIVER OF SUBROGATION

8. TERMINATION

9. DISPUTE RESOLUTION

10. MISCELLANEOUS PROVISIONS

11. SCHEDULE OF EXHIBITS

OCT 19 2010

OCT 0 4 2010

| AGC DOCUMENT No. 420 |
| --- |
| STANDARD FORM OF AGREEMENT BETWEEN DESIGN-BUILDER AND ARCHITECT/ENGINEER FOR DESIGN-BUILD PROJECTS |

### ARTICLE 1

### AGREEMENT

This agreement is made this 31th day of August, in the year 2010, by and between:

MTM Builders, Inc.

3479 Kurtz St.

San Diego, CA  92110

**and,**

Bridgers & Paxton Consulting Engineers, Inc.

11209 North Tatum Blvd., Suite 160

Phoenix, Arizona 85028

**For services in connection with the following Project:**

Design Build of selected ECMs, Phoenix VA Medical Center, Phoenix, AZ

**Notice to the parties shall be given at the above addresses.**

ARTICLE 2

GENERAL PROVISIONS

*The Prime Contractor, Pathfinder Construction, Inc. has contracted the design services required of the Design-Build Agreement attached as Exhibit A (Prime Contract) with the owner to MTM Builders, Inc (Designer/Builder)*

The Prime Contractor, has agreed in its Design-Build Agreement with the Department of Veterans Affairs (Owner), to procure the services of licensed design professionals to provide the architectural and engineering services required to design the Project in accordance with the Owner's requirements as outlined in the Owner's Program and Design Documents and other relevant data defining the Project, which is attached as Exhibit A. The person or entity providing architectural and engineering services shall be referred to as the Architect/Engineer. The standard of care for architectural and engineering services performed under this Agreement shall be the care and skill ordinarily used by members of the architectural and engineering professions practicing under similar conditions at the same time and locality.

**2.1 TEAM RELATIONSHIP** The Design-Builder and Architect/Engineer agree to work together on the basis of trust, good faith and fair dealing, and shall take actions reasonably necessary to enable each other to perform this Agreement in a timely, efficient and economical manner.

**2.2     DEFINITIONS**

**2.2.1** The *Architect/Engineers Services* shall be to provide the necessary **Mechanical and Electrical** engineering services required by the Design-Builder for the Project, including coordination of design services of subcontractors who may be procured by the Design-Builder to provide both design and construction services for certain Project elements. The Services includes Basic Services provided in the Design and Construction Phases plus Additional Services as may be authorized by the Owner and Design-Builder.

**2.2.2** The *Contract Documents* govern the relationship between the Design-Builder and the Architect/Engineer, The Contract Documents consist of this Agreement, including the exhibits set forth in Article 11 plus written amendments to this Agreement as agreed to by the parties.

**2.2.3** The term *day* shall mean calendar day unless otherwise specifically designated.

**2.2.4** The *Design-Builders Work* is the design and construction services required of the Design-Builder

to fulfill its obligations pursuant to its agreement with the Prime Contractor (the Work). The Architect/Engineer's Services are a portion of the Work.

**2.2.5** *Owner* is the person or entity identified as such in Article 1 and includes the Owner's Representative as identified in the agreement between the Owner and the Prime Contractor.

**2.2.6** The *Owner's Program and Design Documents* is an initial description of the Owner's objectives that may include budgetary and time criteria, space requirements and relationships, flexibility and expandability requirements, special equipment and systems, and site requirements.

**2.2.7** The *Project,* as identified in Article 1, is the building, facility and/or other improvements for which the Design-Builder is to perform pursuant to its agreement with the Prime Contractor. It may also include improvements to be undertaken by the Prime Contractor, Owner or others retained by the Owner.

**2.2.8** *Substantial Completion* occurs on the date when construction is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Project, or a designated portion, for the use for which it is intended. This date shall be confirmed by a certificate of Substantial Completion signed by the Owner and Design-Builder.

**2.2.9** *Worksite* means the geographical area at the location mentioned in Article 1.

**2.3      EXTENT OF AGREEMENT** This Agreement represents the entire agreement between the Design-Builder and the Architect/Engineer and supersedes all prior negotiations, representations and agreements, either written or oral.

ARTICLE 3

ARCHITECT/ENGINEER'S RESPONSIBILITIES

**3.1 OBLIGATIONS DERIVATIVE** The Design-Builder and the Architect/Engineer are mutually bound by the terms of this Agreement. To the extent that the terms of the agreement between the Prime Contractor and Design-Builder apply to the performance of the Architect/Engineer's Services, then the Design-Builder assumes toward the Architect/Engineer all the obligations, rights, duties, and remedies that the Prime Contractor assumes toward the Design-Builder. In an identical way, the Architect/Engineer

assumes toward the Design-Builder all the same obligations, rights, duties, and remedies that the Design-Builder assumes toward the Prime Contractor, In the event of an inconsistency among the documents, the specific terms of this Agreement shall govern.

**3.1.1 PROJECT REQUIREMENTS** The Architect/Engineer, in order to determine the requirements of the Project, shall review the information in Exhibit A. The Architect/Engineer shall review its understanding of the Project requirements with the Design-Builder.

*Exhibit A will define the basic services, design development documents, and construction documents required.*

**3.2 BASIC SERVICES** The Architect/Engineer's Basic Services consist of a review of the Project information furnished by the Design-Builder and the provision of the Schematic Design Documents, Design Development Documents, Construction Documents, Guaranteed Maximum Price (GMP) Documents (if required), bidding or negotiation assistance, Construction Phase Services, and other basic services as may be provided in Subparagraph 3.2.19., and shall include normal architectural, structural, mechanical, electrical and site design. The Architect/Engineer shall coordinate its services with all services of design consultants and subcontractors retained by the Design/Builder. These services shall be performed in accordance with the schedule established by the Design-Builder pursuant to Article 5. If required by the Design-Builder, the Architect/Engineer shall assist the Design-Builder in preparing the Preliminary Evaluation, schedule, and estimate for the Prime Contractor's written approval. Any Basic Services provisions that are not required under this Agreement shall be stricken.

**3.2.1 SCHEMATIC DESIGN DOCUMENTS** Based upon the Preliminary Evaluation and other relevant information, the Architect/Engineer shall prepare, for approval by the Design-Builder and Prime Contractor, Schematic Design Documents consisting of drawings, outline specifications and other conceptual documents illustrating the Project's basic elements, scale, and their relationship to the Worksite. Two printed sets and one reproducible set of these Documents shall be provided to the Design-Builder. When the Architect/Engineer submits the Schematic Design Documents, the Architect/ Engineer shall identify in writing all material changes and deviations that have taken place from the Preliminary Evaluation, schedule and estimate. Following completion of the Schematic Design Documents, the Architect/Engineer shall cooperate with the Design-Builder in updating the preliminary schedule and estimate.

**3.2.2 DESIGN DEVELOPMENT DOCUMENTS** Based on the approved Schematic Design Documents, the Architect/Engineer shall prepare, for approval by the Design-Builder, Prime Contractor and governmental authorities, including revisions necessary to secure such approvals, Design Development Documents. The Design Development Documents shall further define the Project, including drawings and outline specifications fixing and describing the Project size and character, and other appropriate elements incorporating the structural, architectural, mechanical and electrical systems. When the Architect/Engineer submits the Design Development Documents, the Architect/Engineer shall identify in writing all material changes and deviations that have taken place from the approved Schematic Design Documents. Two printed sets and one reproducible set of these Documents shall be provided to the Design-Builder. Following completion of the Design Development Documents, the Architect/Engineer shall cooperate with the Design-Builder in updating the schedule and estimate.

**3.2.3 CONSTRUCTION DOCUMENTS** Based on the approved Design Development Documents and subject to the requirements of Subparagraph 3.2.4 if a GMP proposal has been prepared and accepted, the Architect/Engineer shall prepare, for approval by the Design-Builder, Prime Contractor and governmental authorities, including revisions necessary to secure such approvals, Construction Documents setting forth in detail the requirements for construction of the Project, consisting of drawings and specifications that comply with codes, laws and regulations enacted at the time of their preparation. When the Architect/Engineer submits the Construction Documents, the Architect/Engineer shall identify in writing all material changes and deviations that have taken place from the approved Design Development Documents. Two printed sets and one reproducible set of these Documents shall be provided to the Design-Builder. Following completion of the Construction Documents, and if a GMP has not been prepared and accepted, the Architect/Engineer shall cooperate with the Design-Builder in updating the schedule and estimate.

**3.2.4 GUARANTEED MAXIMUM PRICE (GMP) PROPOSAL** Upon request of the Prime Contractor and agreement by the Design-Builder, the Design-Builder will prepare a GMP Proposal. If the Proposal is prepared prior to completion of the Construction Documents, the Design-Builder will include in the Proposal a statement of the assumptions and qualifications on which the GMP is based. Prior to submission of the proposal to the Prime Contractor, the Architect/Engineer shall review the Proposal and advise the Design-Builder of any errors, omissions or inconsistencies it may discover. Following

---

~~acceptance of the Proposal by the Prime Contractor, the Architect/Engineer shall complete the Construction Documents, incorporating the agreed-upon assumptions and clarifications. The Design-Builder and Architect/Engineer shall work together to monitor the completion of the drawings and specifications so that the Project can be completed within the GMP and by the date of Substantial Completion. Two printed sets and one reproducible set of the drawings and specifications on which the GMP is based shall be provided to the Design-Builder.~~

**3.2.5 BIDDING AND NEGOTIATION ASSISTANCE**
The Architect/Engineer shall assist the Design-Builder in obtaining bids from subcontractors and major suppliers by providing necessary drawings, specifications and addenda, attending pre-bid meetings, and clarifying the scope and intent of the Construction Documents.

**3.2.6 CONSTRUCTION PHASE SERVICES** The Construction Phase shall commence upon the issuance of a written notice from the Prime Contractor to proceed with construction. The Architect/Engineer shall furnish interpretations and clarifications of the drawings and specifications, by means of additional drawings, addenda or otherwise, as are necessary for the proper execution and progress of the Project. All such interpretations and clarifications shall be consistent with the intent of the Construction Documents and reasonably inferable from them.

**3.2.7** The Architect/Engineer shall timely review and approve or otherwise respond to the Design-Builder's submittals, including shop drawings, product data and samples **within five (5) business days of receipt.** Submittals shall be checked for **general** conformance with the design and scope of the Project and for **general** compliance with the Construction Documents.

**3.2.8** Approval by the Design-Builder or Prime Contractor shall not be deemed to be an assumption of responsibility by the Design-Builder or Prime Contractor for any error, inconsistency or omission in the drawings and specifications or other documents prepared by the Architect/Engineer, its employees, subcontractors, agents or consultants, who shall be responsible **for engineering/design services** for any such error, inconsistency or omission.

**3.2.9** The Architect/Engineer shall have reasonable access to the Worksite at all times.

**3.2.10** The Architect/Engineer shall communicate with the Owner, Prime Contractor, and the Design-Builder's subcontractors and suppliers only through the Design-Builder.

**3.2.11** The Architect/Engineer shall visit the Worksite at appropriate intervals ~~but not less than __ times or pursuant to such schedule as the parties may establish by attachment to this Agreement,~~ to become generally familiar with the quality of the construction and to determine in **general** if the construction is proceeding in general accordance with the Construction Documents. On the basis of these on-site observations, the Architect/Engineer shall endeavor to guard the Design-Builder against defects or deficiencies in the construction. After each Worksite visit, the Architect/Engineer shall promptly provide the Design-Builder with copies of all notes and field reports. If the Architect/Engineer becomes aware of any such defects, deficiencies or violations, it shall give prompt written notice to the Design-Builder. The Architect/Engineer shall not be responsible for construction means, methods, techniques, sequences and procedures, unless they are specified by the Architect/Engineer, or for ensuring that the Design-Builder's Work is in accordance with the Construction Documents.

**3.2.12** The Architect/Engineer is not responsible for safety precautions and programs. However, if the Architect/Engineer becomes aware of safety violations, the Architect/Engineer shall give prompt written notice to the Design-Builder.

**3.2.13** The Architect/Engineer shall assist the Design-Builder and Prime Contractor, in filing required documents with governmental authorities having jurisdiction over the Project.

**3.2.14** The Architect/Engineer shall not be responsible for the acts or omissions of the Design-Builder or any of its subcontractors, or their agents or employees, or any other persons performing work on the Project who are not under the control or authority of the Architect/Engineer.

**3.2.15** The Architect/Engineer shall attend meetings with the Owner and Design-Builder upon request of the Design-Builder.

**3.2.16** All of the Services to be provided by the Architect/Engineer shall be rendered **expeditiously as is consistent with professional skill and care** so as not to delay the Design-Builder.

**3.2.17** The Architect/Engineer shall assist the Design-Builder in conducting **site observations** to determine the date of Substantial Completion of the Design-Builder's subcontractors.

**3.2.18** The Architect/Engineer shall assist the Design-Builder in obtaining permits necessary for the construction of the Project.

**3.2.19** OTHER BASIC SERVICES The following services shall also be included as part of Basic Services: **Exhibit A will define the basic services,**

---

*design development documents, and construction documents required.*

**3.3 ADDITIONAL SERVICES** The following services shall be provided by the Architect/Engineer and paid for as Additional Services if they are authorized in advance by the Design-Builder in writing and are not included in Basic Services set forth in Paragraph 3.2:

***See Exhibit D for Additional Services.***

**3.3.1** Development of the Owner, Prime Contractor's Program, Project budgeting, investigating sources of financing, general business planning and other information and documentation as may be required to establish the feasibility of the Project.

**3.3.2** Consultations, negotiations, and documentation supporting the procurement of Project financing.

**3.3.3** Surveys, site evaluations, legal descriptions and aerial photographs.

**3.3.4** Appraisals of existing equipment, existing properties, new equipment and developed properties.

**3.3.5** Soils, subsurface and environmental studies, reports and Investigations required for submission to governmental authorities or others having jurisdiction over the Project.

**3.3.6** Consultations and representations before governmental authorities or others having jurisdiction over the Project other than normal assistance in securing building permits.

**3.3.7** Investigation or making measured drawings of existing conditions or the verification of Owner-provided drawings and information.

**3.3.8** Artistic renderings, models and mockups of the Project or any part of the Project.

**3.3.9** Inventories of existing furniture, fixtures, furnishings and equipment which might be under consideration for incorporation into the Project.

**3.3.10** Interior design and related services including procurement and placement of furniture, furnishings, artwork and decorations.

**3.3.11** Making revisions to the Construction Documents during the Final Submittal Phase or Construction Administration Phase after they have been approved by the Owner, Design-Builder, and governmental authorities, and which are due to causes beyond the control of the Architect/Engineer, unless noted otherwise.

**3.3.12** Design, coordination, management, expediting and other services supporting the procurement of materials to be obtained, or work to be performed, by the Owner including but not limited to telephone systems, computer wiring networks, sound systems, alarms, security systems and other specialty systems which are not a part of this Agreement.

**3.3.13** Estimates, proposals, appraisals, consultations, negotiations and services in connection with the repair or replacement of an insured loss.

**3.3.14** The premium portion of overtime work ordered by the Design-Builder including productivity impact costs, unless such overtime work is required because of a delay caused by the Architect/Engineer.

**3.3.15** Document reproduction exceeding the limit it provided for in this Agreement.

**3.3.16** Out-of-town travel by the Architect/Engineer in connection with the Architect/Engineer's Services except between the Architect/Engineer's office, Design-Builder's office, Owner's office and the Worksite.

**3.3.17** Obtaining service contractors and training maintenance personnel; assisting and consulting in the use of systems and equipment after the initial start-up.

**3.3.18** Services for tenant or rental spaces not a part of this Agreement.

**3.3.19** Services requested by the Design-Builder which are not specified in this Agreement and which are not normally part of generally accepted design and construction practice.

**3.3.20** Serving or preparing to serve as an expert witness in connection with any proceeding, legal or otherwise, regarding the Project.

**3.3.21** Preparing reproducible record drawings from marked-up prints, drawings or other documents that incorporated significant changes made during the Construction Phase, unless noted otherwise.

**3.3.22** Worksite visits in excess of the number of visits provided for in a schedule established by and attached to this Agreement.

**3.4 QUALIFICATIONS** The Architect/Engineer ***acknowledges*** and represents that the Architect/Engineer and its consultants and subcontractors are duly qualified, licensed, registered and authorized by law to perform the Architect/Engineer's Services.

**3.5 CONSULTANTS AND SUBCONTRACTORS** The Architect/Engineer shall not engage the services of any consultant or subcontractor without first obtaining the Design-Builder's written approval which approval shall not be unreasonably withheld. Such

approval by the Design-Builder shall not be deemed to create any contractual relationship between the Design-Builder and any such consultant or subcontractor. The Architect/Engineer shall bind its consultants or subcontractors in the same manner as the Architect/Engineer is bound to the Design-Builder under this Agreement.

**3.6 ARCHITECT/ENGINEER'S REPRESENTATIVE** The Engineer's representative is *Steven O'Brien, PE*.

**3.7 KEY PROJECT PERSONNEL** The key project personnel whom the Architect /Engineer will assign are as set forth in *Exhibit C,* including the percentage of time to be devoted by each to the Architect/Engineer's Services. Such personnel shall not be changed without the approval of the Design-Builder, which approval shall not be unreasonably withheld.

**3.8 ROYALTIES, PATENTS AND COPYRIGHTS** The Architect/Engineer shall pay all royalties and license fees which may be due on the inclusion of any patented or copyrighted materials, methods or systems selected by the Architect/Engineer and incorporated in the Work. The Architect/Engineer shall defend, indemnify and hold the Owner, Prime Contractor, and Design-Builder harmless from all suits or claims for infringement of any patent rights or copyrights arising out of such selection. The Owner, Prime Contractor, and Design-Builder agree to defend, indemnify and hold the Architect/Engineer harmless from any suits or claims of infringement of any patent rights or copyrights arising out of any patented or copyrighted materials, methods or systems specified by the Owner, Prime Contractor, or Design-Builder.

**3.9 CONFIDENTIALITY** The Architect/Engineer shall treat as confidential and not disclose to third parties, except as is necessary for the performance of the Services, or use for its own benefit, any of the Owner's or Design-Builder's developments, confidential information, know-how, discoveries, production methods and the like that may be disclosed to the Architect/Engineer or which the Architect/Engineer may acquire in connection with the Services. The Architect/Engineer shall treat as confidential information all of the Design-Builder's estimating systems and historical and parameter cost data that may be disclosed to the Architect/Engineer in connection with the performance of this Agreement.

**ARTICLE 4**

**DESIGN-BUILDER'S RESPONSIBILITIES**

**4.1 INFORMATION AND SERVICES PROVIDED BY DESIGN-BUILDER**

**4.1.1** To the extent the Design-Builder has obtained the information and services identified below from the Owner, the Design-Builder shall provide them to the Architect/Engineer. The Architect/Engineer shall be entitled to rely on such information and services to the same extent as the Design- Builder, However, the Design-Builder does not warrant the accuracy or completeness of such information or services.

**4.1.1.1** All available information describing the physical characteristics of the site, including surveys, site evaluations, legal descriptions, existing conditions, subsurface and environmental studies, reports and investigations.

**4.1.1.2** Inspection and testing services during construction as required by law or as mutually agreed. Unless otherwise provided in the Contract documents, necessary approvals, site plan review, rezoning, easements, and assessments, fees, and charges required for the construction, use, occupancy or renovation of permanent structures, including legal and other required services.

**4.1.2** The Design-Builder shall be responsible for the preparation of budgets, cost estimates and schedules.

**4.1.3** The Design-Builder shall promptly report to the Architect/Engineer errors, inconsistencies and omissions it discovers in the Construction Documents; however, nothing in this Paragraph shall relieve the Architect/Engineer of responsibility for its own errors, inconsistencies and omissions.

**4.1.4** The Architect/Engineer shall have the right, upon request, to receive from the Design-Builder such information as the Design-Builder has obtained relative to the Owner's financial ability to pay for the Project.

**4.1.5** If the Architect/Engineer does not receive the information referenced in Subparagraph 4.1.4 with regard to the Owner's ability to pay for the Work as required by the Contract Documents, the Architect/Engineer may request the information from the Owner and/or the Owner's lender.

**4.1.6** The Design-Builder shall provide the Architect/Engineer with a list of all consultants and subcontractors retained by the Design-Builder to perform services for the Project.

**4.2 DESIGN-BUILDER'S REPRESENTATIVE**

The Design-Builder's representative is *Miguel Terrazas, MTM Builders, Inc.*

**ARTICLE 5**

---

**SCHEDULE**

The Architect/Engineer shall provide the Services required by this Agreement at such reasonable times as will enable the Design-Builder to complete its work in accordance with the schedules established by the Design-Builder.

**5.1 DELAYS BY ARCHITECT/ENGINEER** If the progress or completion of the Project is delayed by reason of any fault, neglect, error or omission of the Architect/Engineer, the Architect/Engineer shall compensate the Design-Builder for and indemnify it against all costs, expenses, liabilities or damages which may accrue as a result of such delay. In addition, the Architect/Engineer shall provide Services at its own cost, including overtime costs required to make up schedule delays plus expenses as are necessary to make up for time lost by the Design-Builder because of such delay *per mutually agreed schedule conforming to the prime contract.*

**5.2 DELAYS BY DESIGN-BUILDER OR OWNER, PRIME CONTRACTOR,** If the Architect/Engineer is delayed in the performance of its Services by any fault, neglect, error or omission of the Design-Builder or Owner, Prime Contractor,, or by changes ordered by the Owner, Prime Contractor, or Design-Builder which are due to causes beyond the Architect/Engineer's control, or a delay authorized by the Design-Builder pending dispute resolution, then the time allotted in the schedule for the Architect/Engineer's Services shall be extended for the period of such delay or the Design-Builder shall authorize the Architect/Engineer to work overtime to make up such lost time.

**5.3 MUTUAL WAIVER OF CONSEQUENTIAL DAMAGES**

**5.3.1** To the extent the agreement between the Owner, Prime Contractor, and the Design-Builder provides for a mutual waiver of consequential damages by the Owner, Prime Contractor, and the Design-Builder, the Design-Builder and Architect/Engineer waive claims against each other for consequential damages arising out of or relating to this Agreement. Similarly, the Architect/Engineer shall obtain from its consultants mutual waivers of consequential damages that correspond to the Architect/ Engineer's waiver of consequential damages. To the extent applicable, this mutual waiver applies to consequential damages due to termination by the Design-Builder or the Owner, Prime Contractor, in accordance with this Agreement or the agreement between the Owner, Prime Contractor, and the Design-Builder.

**5.3.2** To the extent the agreement between the Owner, Prime Contractor, and the Design-Builder provides for a mutual waiver of consequential damages by the Owner, Prime Contractor, and the Design-Builder, damages for which the Design-Builder is liable to the Owner, Prime Contractor, including those related to Subparagraph 7.1.1 are not consequential damages for the purpose of this waiver. Similarly, to the extent any Architect/Engineer-consultant agreement provides for a mutual waiver of consequential damages by the Owner, Prime Contractor, and the Design-Builder, damages for which the Architect/Engineer is liable to its consultants due to the fault of the Owner, Prime Contractor, or Design-Builder are not consequential damages for the purpose of this waiver.

**ARTICLE 6**

**ARCHITECT/ENGINEER'S COMPENSATION AND PAYMENTS**

**6.1 COMPENSATION FOR BASIC SERVICES**

**6.1.1** For Basic Services as described in Paragraph 3.2, the Design-Builder shall compensate the Architect/Engineer on the following basis, including applicable sales taxes (cross-out options not applicable):

**6.1.1.1**  Stipulated Fixed Fee.

The amount of Dollars *$987,691.00 (Nine Hundred Eighty Seven Thousand, Six Hundred and Ninety One Dollars.)*

6.1.1.2  Guaranteed Maximum Fee. The actual cost of the following:

a. Architect/Engineer's personnel as listed in Exhibit C.

b. Services of professional consultants and subcontractors at a multiple of ___ times the amount billed to the Architect/Engineer for such services.

c. Reimbursable expenses as set forth in Exhibit D.

The Architect/Engineer shall be compensated for the above costs up to a Guaranteed Maximum Fee of N/A Dollars ($).

6.1.1.3   Other basis of Fee:

**6.2 ADDITIONAL SERVICES**

**6.2.1** The Architect/Engineer shall be compensated for Additional Services as described in Paragraph 3.3 on the following basis:  *See Attachments.*

---

## 6.3 PAYMENTS

**6.3.1** The Architect/Engineer shall submit to the Design-Builder for its approval monthly applications for payment for Basic and Additional Services. The Design-Builder shall submit approved applications for payment together with its own to the Prime Contractor. Payment shall be made within seven days of the Design-Builder's receipt of payment from the Prime Contractor for the amount approved on the Architect/Engineer's application. Payments for Basic and Additional Services shall not exceed the following percentages of the total Fee for Basic and Additional Services at the completion of each Phase of the Architect/Engineer's Services:   ***See Exhibit E, Architect/Engineer's Compensation Schedule***.

~~Schematic Design Documents    ___%~~

~~Design Development Documents___%~~

~~GMP Documents___%~~

~~Construction Documents____%~~

~~Bidding and negotiation assistance___%~~

~~Construction Phase___%~~

~~TOTAL                 100 %~~

Upon receipt of payment from the Design-Builder, the Architect/Engineer shall promptly make payment to its consultants and subcontractors as appropriate.

**6.3.2   RETENTION** If a portion of the Architect/Engineer's compensation is to be retained, the terms of retainage shall be as follows: **N/A**

**6.3.3** Prior to final payment to the Architect/Engineer, the Architect/Engineer shall furnish evidence satisfactory to the Design-Builder that there are no claims, obligations or liens outstanding in connection with the services provided by the Architect/Engineer. Acceptance of final payment shall constitute a waiver of all claims by the Architect/Engineer for compensation for the Architect/Engineer's Services performed.

***6.3.4 Should there be any claim, obligation or lien asserted before or after final payment is made that arises from the performance of the Architect/Engineer's Services, the Architect/Engineer shall reimburse the Design-Builder for any costs and expenses, including attorney's fees, costs and expenses, incurred by the Design-Builder in satisfying, discharging or defending against any such claim, obligation or lien, including any action brought or judgment recovered, provided the Design-Builder is making payments or has made payments to the Architect/Engineer in accordance with the terms of this Agreement. This is not to release Engineer***

***from responsibility for claims made after final payment.***

**6.3.5** Should the Architect/Engineer or its consultants or subcontractors cause damage to the Project, or fail to perform or otherwise be in default under the terms of this Agreement, the Design-Builder shall have the right to withhold from any payment due or to become due, or otherwise be reimbursed for, an amount sufficient to protect the Owner and Design-Builder from any loss that may result. Payment of the amount withheld shall be made when the grounds for the withholding have been removed.

**6.3.6** Expense records of the Architect/Engineer's personnel, consultants, subcontractors and services shall be maintained in accordance with generally accepted accounting principles and shall be available to the Design-Builder at mutually convenient times.

## ARTICLE 7

### INDEMNITY, INSURANCE AND WAIVER OF SUBROGATION

#### 7.1 INDEMNITY

**7.1.1** In addition to any liability or obligation of the Architect/Engineer to the Design-Builder that may exist under any other provision of this Agreement or by law or otherwise, to the fullest extent permitted by law the Architect/Engineer shall **defend**, indemnify and hold harmless the Design-Builder and Owner, ~~**Prime Contractor**~~, and their respective officers, ~~**agents**~~, employees, ~~**consultants    and Subcontractors**~~ from and against ~~**claims, actions, proceedings**~~, liabilities, ~~**losses**~~, damages, costs and expenses, including **reasonable** legal fees, that may arise from the performance of the Architect/Engineer's Services, to the extent of the negligence attributed to such acts or omissions by the Architect/Engineer, its officers, agents, employees or subcontractors, or anyone employed directly or indirectly by any of them or by anyone for whose acts any of them may be liable.

**7.1.2** To the fullest permitted by law, the Design-Builder agrees to **defend**~~,~~ indemnify and hold harmless the Architect/Engineer, its officers, agents and employees from and against claims, actions, proceedings, liabilities, losses, damages, costs and expenses, including legal fees, which the Architect/Engineer, its officers, agents and employees may sustain by reason of any negligent act or omission by the Design-Builder, its officers, agents, employees or Subcontractors arising out of the Design-Builder's Work.

#### 7.2 INSURANCE

**7.2.1** Before commencing its Services and as a condition of payment, the Architect/Engineer shall purchase and maintain such insurance as will protect it from the claims arising out of its operations under this Agreement, whether such operations are by the Architect/Engineer or any of its consultants or subcontractors or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable.

**7.2.2** The Architect/Engineer shall maintain at least the following insurance with a company satisfactory to the Design-Builder: **Noted Below**

**7.2.2.1** Workers' Compensation and Employers' Liability Insurance in accordance with the laws of the State in which the Project is located. The Workers' Compensation policy shall provide for a waiver of subrogation in favor of the Design-Builder. Employers Liability coverage must have limits of liability of at least:

    a. Bodily Injury by Accident, Each Accident:

    $ 100,000

    b. Bodily Injury by Disease, Policy Limit:

    $ 100,000

    c. Bodily Injury by Disease, Each Employee:

    $ 100,000

**7.2.2.2** Commercial General Liability, including contractual liability insurance against the liability assumed in Subparagraph 7.1.1

    a. Each occurrence limit:

    $1,000,000

    b. General aggregate:

    $1,000,000

    c. Products/Completed Operations Aggregate

    $1,000,000

    d. Personal and Advertising Injury Limit:

    $1,000,000

**7.2.2.3** Comprehensive Automobile Liability

a. Combined Single Limit, Bodily Injury and Property Damage:

    $500,000 (Each Occurrence)

b. Bodily Injury

    $ 200,000 (Each Person)

    $ 500,000 (Each Occurrence)

c. Property Damage

    $ 20,000 (Each Occurrence)

**7.2.3** The Architect/Engineer shall require its consultants and subcontractors to maintain Commercial General Liability and Comprehensive Automobile Liability coverage with a company satisfactory to the Design-Builder and with limits acceptable to the Design-Builder.

**7.2.4 PROFESSIONAL LIABILITY INSURANCE** The Architect/Engineer and all consultants retained by the Architect/Engineer shall obtain professional liability insurance for claims arising from the negligent performance of professional services under this Agreement, which shall be ~~either~~:

a. General Office Coverage

    $ 1,000,000        ~~OR,~~

***Each claim and in the aggregate***

~~b. Project Specific Professional Liability Insurance written for not less than $1,000,000 per claim and in the aggregate with a deductible not to exceed $50,000. The Professional Liability Insurance shall contain prior acts coverage sufficient to cover all Services performed by the Architect/Engineer. These requirements shall be continued in effect for five (5) year(s) after the Date of Substantial Completion. The deductible shall be paid by the Architect/Engineer.~~

Policies under Clauses 7.2.2.2 and 7.2.2.3 shall list the Design-Builder as an additional insured, and such policies shall be primary over any other insurance carried by the Design-Builder.

**7.2.5** The Architect/Engineer shall furnish to the Design-Builder certificates of insurance evidencing the required coverages listed in this Paragraph 7.2 and a copy of its Professional Liability policy. No policy shall be cancelled or modified without thirty (30) days prior written notice to the Design-Builder. Such requirement for prior written notice does not apply to modifications caused by claims made against the policy. The Architect/Engineer ~~and its Professional Liability insurance carrier~~ shall notify the Design- Builder within thirty (30) days of any claims made or loss expenses incurred against the Professional Liability policy.

The Design-Builder shall have the right to notify directly the Architect/Engineer's Professional Liability insurance carrier of a claim against the policy. The Professional Liability policies shall be continued in effect for five (5) years following final payment to the Architect/Engineer.

**7.3 WAIVER OF SUBROGATION** The Design-Builder and Architect/Engineer waive all rights against each other and the Owner, Prime Contractor,,

---

Subcontractors and Sub subcontractors for loss or damage to the extent covered by property or equipment insurance, except such rights as they may have to the proceeds of such insurance. The Architect/Engineer shall require similar waivers from its consultants and subcontractors.

**ARTICLE 8**

**TERMINATION**

**8.1 TERMINATION BY EITHER PARTY** Either party may terminate this Agreement upon seven (7) days written notice if the other party materially breaches its terms through no fault of the initiating party.

**8.2 TERMINATION BY DESIGN-BUILDER** This Agreement may be terminated by the Design-Builder upon at least seven (7) days written notice in the event that the Design-Builder's agreement with the Owner is terminated.

**8.3 COMPENSATION** In the event of termination, the Architect/Engineer shall be compensated to the extent that the Owner pays the Design-Builder for the Architect/Engineer's Services.

## ARTICLE 9

### DISPUTE RESOLUTION

**9.1 INITIAL DISPUTE RESOLUTION** If a dispute arises out of or relates to this Agreement or its breach, the parties shall endeavor to settle the dispute first through direct discussions. If the dispute cannot be settled through direct discussions, the parties shall endeavor to settle the dispute by mediation under the Construction Industry Mediation Rules of the American Arbitration Association before recourse to the dispute resolution procedures contained in this Agreement The location of the mediation shall be the location of the Project. Once a party files a request for mediation with the other party and with the American Arbitration Association, the parties agree to conclude such mediation within sixty (60) days of filing of the request. Either party may terminate the mediation at any time after the first session, but the decision to terminate must be delivered in person by the party's representative to the other party's representative and the mediator.

**9.2 CONTINUANCE OF SERVICES AND PAYMENT** Unless otherwise agreed in writing, the Architect/Engineer shall continue to perform under this Agreement during any dispute resolution proceeding. It the Architect/Engineer continues to perform, the Design-Builder shall continue to make payments in accordance with this Agreement.

**9.3 MULTIPARTY PROCEEDING** The parties agree that to the extent permitted by the Contract Documents all parties necessary to resolve a claim shall be parties to the same dispute resolution proceeding. To the extent disputes between the Design-Builder and Architect/Engineer involve in whole or in part disputes between the Design-Builder and the Owner, Prime Contractor, disputes between the Architect/Engineer and the Design-Builder shall be decided by the same tribunal and in the same forum as disputes between the Design-Builder and the Owner, Prime Contractor,.

**9.4 DISPUTE BEWEEN DESIGN-BUILDER AND ARCHITECT/ENGINEER** In the event the provisions for resolution of disputes between the Design-Builder and the Owner, Prime Contractor, contained in the Contract Documents do not permit consolidation or joinder with disputes of third parties, such as the Architect/Engineer, resolution of disputes between the Architect/Engineer and the Design-Builder involving in whole or in part disputes between the Design-Builder and the Owner, Prime Contractor, shall be stayed pending conclusion of any dispute resolution proceeding between the Design-Builder and the Owner, Prime Contractor. At the conclusion of those proceedings, disputes between the Architect/Engineer and the Design-Builder shall be

submitted again to mediation pursuant to Paragraph 9.1. Any disputes not resolved by mediation shall be decided in the manner selected in the agreement between the Owner, Prime Contractor, and the Design-Builder.

**9.5 COST OF DISPUTE RESOLUTION** The cost of any mediation proceeding shall be shared equally by the parties participating. The prevailing party in any dispute arising out of or relating to this Agreement or its breach that is resolved by a dispute resolution procedure designated in the Contract Documents shall be entitled to recover from the other party reasonable attorney's fees, costs and expenses incurred by the prevailing party in connection with such dispute resolution process.

## ARTICLE 10

### MISCELLANEOUS PROVISIONS

**10.1 OWNERSHIP OF *INSTRUMENTS OF SERVICE*** Upon the making of final payment, the Design-Builder shall receive ownership of the property rights, except for copyrights, of all documents, drawings, specifications, electronic data and information prepared, provided or procured by the Architect/Engineer or its subcontractors and consultants and distributed to the Design-Builder for this Project, ("Design-Build Documents"). The Design-Builder may not reproduce the Architect/Engineer's stamp, signature, or logo for purposes not directly related to this project without the Architect/Engineer's written permission.

**10.1.1** If this Agreement is terminated pursuant to Paragraphs 8.1 or 82, the Design-Builder shall receive ownership of the property rights, except for copyrights, of the Design-Build Documents upon payment in accordance with Paragraph 8.3, at which time the Design-Builder shall have the right to use, reproduce and make derivative works of the Design-Build Documents to complete the Work.

**10.1.2** It is understood that the Owner, Prime Contractor, shall receive from the Design-Builder the same ownership of property rights, except for copyright, of the Design-Build Documents, as the Design-Builder receives from the Architect/Engineer, in accordance with the ownership of documents provisions in the agreement between the Owner, Prime Contractor, and the Design-Builder. In accordance with the agreement between the Owner, Prime Contractor, and the Design-Builder, the Owner, Prime Contractor, may use, reproduce and make derivative works from the Design-Build Documents for subsequent renovation and remodeling of the Work, but shall not use, reproduce and make derivative works from the Design-Build Documents

---

for other projects without the written authorization of the Design-Builder and Architect/Engineer, who shall not unreasonably withhold consent, The Design-Builder shall not use the Design-Build Documents on other projects without the written authorization of the Architect/Engineer who shall not unreasonably withhold consent.

**10.1.3** Similarly, the Architect/Engineer shall obtain from its subcontractors and consultants property rights and rights of use that correspond to the rights given by the Architect/Engineer to the Design-Builder in this Agreement.

**10.2 ASSIGNMENT** Neither the Design-Builder nor the Architect/Engineer shall assign its interest in this Agreement without the written consent of the other except as to the assignment of proceeds.

**10.3 GOVERNING LAW** This Agreement shall be governed by the law in effect at the location of the Project.

**10.4 SEVERABILITY** The partial or complete invalidity of any one or more provisions of this Agreement shall not affect the validity or continuing force and effect of any other provision.

**10.5 NO WAIVER OF PERFORMANCE** The failure of either party to insist, in any one or more instances, on the performance of any of the terms, covenants or conditions of this Agreement, or to exercise any of its rights, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right with respect to further performance.

**10.6 TITLES** The title given to the Articles of this Agreement are for ease of reference only and shall not be relied upon or cited for any other purpose.

*10.7 JOINT DRAFTING The parties to this Agreement expressly that this Agreement was jointly drafted, and that both had opportunity to negotiate its terms and to obtain the assistance of counsel in reviewing its terms prior to execution. Therefore, this Agreement shall be construed neither against nor in favor of either party, but shall be construed in a neutral manner.*

**10.8 RIGHTS AND REMEDIES** The parties' rights, liabilities, responsibilities and remedies with respect to this Agreement, whether in contract, tort, negligence or otherwise, shall be exclusively those expressly set forth in this Agreement.

**10.9 OTHER PROVISIONS:  None**

## SCHEDULE OF EXHIBITS

**The attached Exhibits are part of this Agreement:**

**EXHIBIT A: The Owner's Program and Design Documents.**

**EXHIBIT B: Architect/Engineer Direct Personnel Expense Rates**

**EXHIBIT C: Design/Builder and A/E Key Project Personnel**

**EXHIBIT D: Architect/Engineer Reimbursable Expenses**

**EXHIBIT E: Architect/Engineer Payment Schedule**

**EXHIBIT F: Architect/Engineer Inclusions and Exclusions**

**EXHIBIT G: Equal Employment Opportunity Clauses**

**This Agreement is entered into as of the date entered in Article 1.**

**DESIGN-BUILDER:  MTM Builders, Inc.**

**BY:** _____

**PRINT NAME:**        E. Miguel Terrazas

**PRINT TITLE:**        President

**President**

**ATTEST:** _____  10/05/10

**ARCHITECT/ENGINEER:  Bridgers & Paxton Consulting Engineers, Inc.**

**BY:** _____

**PRINT NAME:** _____

**PRINT TITLE:** _____

**ATTEST:** _____

Exhibit A
Subcontract 1017.01
Bridgers & Paxton Consulting Engineers, Inc.

Owner's Program and Design Documents

**Project Title:**   Design Build of selected ECMs, Phoenix VA Medical Center, Phoenix, AZ

**Contract No.:**   VA701-C-0062

**Contract Date:** August 27, 2010

**Issued By:**   Department of Veterans Affairs
National Energy Business Center
4141 Rockside Road suite -110
Seven Hills, OH 44131

**Design Build Specifications:**
Solicitation, Offer, and Award VA-701-10-RA-0019, dated 04/15/209 (95 pages).
Appendix A:   Section 00 11 21 - RFP to Design Build
Appendix B:   Design-Build Statement of Work
Appendix C:   Section 01 00 00 - General Requirements
Appendix D:   Section 01 33 23 - Reference Standards
Appendix E:   Section 01 42 19 - Shop Drawings, Product Data, and Samples
Appendix F:   Past Performance Survey
Appendix G:   Quality Control Requirements
Appendix H:   Release of Claims
Appendix I:   Phoenix 35% Drawings

**Amendment /Modifications:**

Amendment 1 Dated 5/6/2010
Amendment 2 Dated 5/13/2010
Amendment 3 Dated 5/14/2010
Amendment 4 Dated 5/17/2010
Best and Final Proposal submitted by Pathfinder Construction, Inc. incorporating OPTION Item
005.2: Installation of chilled water storage (18,000 Ton-Hours of Storage)

Subcontractor Initials _____                              MTM Initials _____
**MTM** Builders, Inc.
3479 Kurtz St., San Diego, CA  92110
Phone: 619-226-6834  Fax: 619-226-6843

Exhibit B
Subcontract 1017.01
Bridgers & Paxton Consulting Engineers, Inc.

Architect/Engineer Direct Personnel Expense Rates

**Project Title:**   Design Build of selected ECMs, Phoenix VA Medical Center, Phoenix, AZ

**Contract No.:**   VA701-C-0062

**Contract Date:** July 30, 2010

**Issued By:**      Department of Veterans Affairs
                    National Energy Business Center
                    4141 Rockside Road suite -110
                    Seven Hills, OH 44131

**Hourly Billing Rates:**

Compensation for contract services is a fixed price as defined in Article 6.

Additional services involving owner are to be provided as allowed by prime
contract between Owner and Design-Builder.
Refer to Exhibit F for specific inclusions and exclusions.

Subcontractor Initials _____      MTM Initials _____

**MTM** Builders, Inc.
3479 Kurtz St., San Diego, CA  92110
Phone: 619-226-6834  Fax: 619-226-6843

Exhibit C
Subcontract 1017.01
Bridgers & Paxton Consulting Engineers, Inc.

Design/Builder and Architect/Engineer Key Project Personnel

**Project Title:**   Design Build of selected ECMs, Phoenix VA Medical Center, Phoenix, AZ

**Contract No.:**   VA701-C-0062

**Contract Date:** July 30, 010

**Issued By:**        Department of Veterans Affairs
                     National Energy Business Center
                     4141 Rockside Road suite -110
                     Seven Hills, OH 44131

**Prime Contractor**
Pathfinder Construction, Inc.
Stephen S. Nishimuta

**Design/Builder**
MTM Builders, Inc.
E. Miguel Terrazas

**Architect**
TBD

**Structural Engineer**
TBD

**Mechanical Engineer (Mechanical/Plumbing)**
Bridgers & Paxton Consulting Engineers, Inc.
Steven O Brien, PE

**Electrical Engineer**
Bridgers & Paxton Consulting Engineers, Inc.
Ken Sumiec, PE.

Subcontractor Initials _____          **MTM** Builders, Inc.                    MTM Initials _____
                              3479 Kurtz St., San Diego, CA  92110
                              Phone: 619-226-6834  Fax: 619-226-6843

Exhibit D
Subcontract 1017.01
Bridgers & Paxton Consulting Engineers, Inc.

Architect/Engineer Direct Reimbursable Expenses

**Project Title:**   Design Build of selected ECMs, Phoenix VA Medical Center, Phoenix, AZ

**Contract No.:**   VA701-C-0062

**Contract Date:** July 30, 2010

**Issued By:**     Department of Veterans Affairs
                National Energy Business Center
                4141 Rockside Road suite -110
                Seven Hills, OH 44131

**Direct Reimbursable Expenses:**

- Expenses for reproduction, handling of drawings, specifications and other documents, other than normally required for coordination and progress review between Owner, Architect, and Consultants.

- Expenses in connection with travel and per diem outside the Phoenix Metropolitan area.

- Testing and measurement of existing mechanical equipment/systems as may be necessary to determine existing capacities and adequacy to serve the project HVAC upgrades.  Fixed prices  includes costs to coordinate with a qualified Testing & Balancing Agency, but it **Does Not** include cost associated with contracting with a Testing & Balancing Agency to provide the HVAC testing and measurement.

- Electrical metering as may be necessary to determine existing capacities and adequacy to serve the project HVAC upgrades.  Fixed price includes costs to coordinate with an Electrical Contractor, but it **Does Not** include cost associated with contracting with an Electrical Contractor to provide the preliminary electrical metering data.

- Applicable fees paid for securing approval of authorities having jurisdiction over the project.

- Plotting on Mylar Media.

- Reimbursable expenses if applicable will be billed at cost.

Subcontractor Initials _____                                              MTM Initials _____

**MTM** Builders, Inc.
3479 Kurtz St., San Diego, CA  92110
Phone: 619-226-6834  Fax: 619-226-6843

Exhibit E
Subcontract 1017.01
Bridgers & Paxton Consulting Engineers, Inc.

Architect/Engineer Compensation Schedule

**Project Title:**  Design Build of selected ECMs, Phoenix VA Medical Center, Phoenix, AZ

**Contract No.:**  VA701-C-0062

**Contract Date:** July 30, 2010

**Issued By:**  Department of Veterans Affairs
National Energy Business Center
4141 Rockside Road suite -110
Seven Hills, OH 44131

    A.  Bridgers & Paxton Consulting Engineers, Inc. shall be paid the specified fixed price on a percentage of completion as per the terms of the prime Design-Build Contract.
    B.  Payment to be made no later than 7 days upon receipt of payment from Owner to Prime Contractor.

Subcontractor Initials _____

MTM Initials _____

**MTM** Builders, Inc.
3479 Kurtz St., San Diego, CA  92110
Phone: 619-226-6834  Fax: 619-226-6843

Exhibit F
Subcontract 1017.01
Bridgers & Paxton Consulting Engineers, Inc.

Architect/Engineer Inclusions and Exclusions

**Project Title:**   Design Build of selected ECMs, Phoenix VA Medical Center, Phoenix, AZ

**Contract No.:**   VA701-C-0062

**Contract Date:** July 30, 2010

**Issued By:**   Department of Veterans Affairs
National Energy Business Center
4141 Rockside Road suite -110
Seven Hills, OH 44131

## Inclusions

    A.   Construction Administration including shop drawings review, and a maximum of one (1) site visit every two (2) weeks for observation of construction work. Including a final site visit with final punch list; based upon an 18 month construction schedule.
    B.   Prepare MEP record drawings and project closeout documents from Design-Builder provided redlines including test and balance reports and O&M manuals.

## Exclusions

    1.   Architectural, structural, or civil engineering/design.
    2.   On-site civil utility design beyond 5'-0" from building, including domestic water, fire main, sanitary sewer, storm sewer, natural gas and all associated meters, backflow preventers, vaults, structures.
    3.   Preparation of estimates of probable MEP construction cost for the proposed work.
    4.   Participation in the Owner's operating and maintenance training conducted by the contractor.
    5.   Design of off-site utility system improvements or expansion included connections to utilities beyond the property line and/or within the public right-of-way.
    6.   Design and analysis of site drainage or landscape irrigation system.
    7.   Site survey with all appropriate topographical information including location and identification of all surface and sub-surface utility structures and distribution systems.
    8.   Preparation of detailed fire alarm calculations.
    9.   Detailed short circuit or coordination studies and measurement of existing electrical equipment and power distribution.

Subcontractor Initials _____          MTM Initials _____

**MTM** Builders, Inc.
3479 Kurtz St., San Diego, CA  92110
Phone: 619-226-6834  Fax: 619-226-6843

10. Testing & Measurement of the existing building HVAC air distribution or electrical service as may be required to determine the existing capacities and adequacy to serve the proposed tenant improvement area.
11. Representation on site during mechanical, electrical and control system start-up, testing or commissioning.  Commissioning might include, but not limited to, the following:
    a.  Detailed systems operation verification
    b.  Point by point control/wiring systems checkout
    c.  Verification of compliance with design criteria
    d.  Assisting Owner and Contractor in critical path start-up
    e.  Assisting User with performance verification
    f.  Documentation
    g.  Participation in maintenance staff training
12. Design, coordination, and/or cooperation with any asbestos or hazardous waste related activities.
13. Special on-site observation/inspection which may be required by the City of Phoenix Building Department or County or State Building Department/Officials.
14. Energy analysis and/or life cycle cost studies or system alternatives.
15. Preparation of documents for LEED Certification.

**Qualifications**

a.  Design-Builder shall furnish Engineer with two (2) half-size blueprint copies of the Schematic Design, Design Development and Construction Document submittals with Owner review and approval of each submittal.  These sets will include all discipline drawings, specifications, narratives, cost estimates, addenda, and change orders

Subcontractor Initials _____

MTM Initials _____

**MTM** Builders, Inc.
3479 Kurtz St., San Diego, CA  92110
Phone: 619-226-6834  Fax: 619-226-6843

Exhibit G
Subcontract 1017.01
Bridgers & Paxton Consulting Engineers, Inc.

**Equal Employment Opportunity Clauses Included in This Contract**
(This text is available to sensory impaired individuals upon request.  Voice phone: 202-693-0023,
TDD* phone: 202-693-1308.)

**A. Paragraph 60-4.3 (a)**

The equal opportunity clause published at 41 CFR 60-1.4(a) of this chapter is required to be
included in, and is part of, all nonexempt Federal contracts and subcontracts, including
construction contracts and subcontracts.  The equal opportunity clause published at 41 CFR 60-
1.4 (b) is required to be included in, and is a part of, all non-exempt federally assisted
construction contracts and subcontracts.  In addition to the clauses described above, all Federal
contracting officers, all applicants and all nonconstruction contractors, as applicable, shall include
the specifications set forth in this section in all Federal and federally assisted construction
contracts in excess of $10,000 to be performed in geographical areas designated by the Director
pursuant to 60-4.6 of this part and in construction subcontracts in excess of $10,000 necessary in
whole or in part to the performance of nonconstruction Federal contracts and subcontracts
covered under the Executive Order.

**B. Paragraphs 60-4.3 (1) thru 60-4.3 (14)**

**C. Entire "Code of Federal Regulations", Title 41, Part 60**

It is the policy of MTM Builders, Inc. to provide equal employment without regard to race, color,
religion, sex, national origin, age, physical or mental disability or status as a special disabled
veteran or other protected veteran.  In this regard, you as our subcontractor must comply with
these requirements.  When Federal work is performed, the department of labor has the right to
audit any prime contractor or subcontractor, ensuring their compliance with the EEO Program.
You may contact the Department of Labor with any questions at:

U.S. Department of Labor
Office of Federal Contract Compliance
5675 Ruffin Road Suite 320
San Diego, CA 92123-5378
858-467-7002 Phone
858-467-7014 Fax

Subcontractor Initials                  MTM Initials

**MTM** Builders, Inc.
3479 Kurtz St., San Diego, CA  92110
Phone: 619-226-6834  Fax: 619-226-6843